IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RONALD SCIORTINO,
*on behalf of himself and all others*
*similarly situated*,

        Plaintiff,

    v.

NATIONSTAR MORTGAGE, LLC,

        Defendant.

CIVIL ACTION FILE

NO. 1:12-CV-01563-AT-WEJ

## FINAL REPORT AND RECOMMENDATION

This is an action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.  (See First Am. Class Action Compl. for Violating the Fair Debt Collection Practices Act [8] ("Am. Compl.").)[1]  This case is before the Court on the Motion to Dismiss Amended Complaint [10] filed by defendant, Nationstar

---

[1] Plaintiff, Ronald Sciortino, filed an initial Class Action Complaint for Violating the Fair Debt Collection Practices Act [1] ("Complaint") on May 4, 2012, to which defendant responded in the Motion to Dismiss Complaint or Quash Service of Process [4] ("Motion to Dismiss") on June 6, 2012.  Plaintiff filed the Amended Complaint on June 25, 2012.  (See Am. Compl.)  The Amended Complaint has superseded the initial Complaint.  See Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007) ("Under . . . federal law, an amended complaint supersedes the initial complaint and becomes the operative pleading in the case."); see also Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 747 (11th Cir. 2010).  Accordingly, the undersigned does not consider the initial Complaint and **RECOMMENDS** that the Motion to Dismiss [4] be **DENIED AS MOOT**.

Mortgage, LLC ("Nationstar").[2]  For the reasons explained below, the undersigned

**RECOMMENDS** that said Motion be **GRANTED**.

## I.      MOTION TO DISMISS STANDARD

Defendant moves to dismiss the Amended Complaint under Federal Rule of

Civil Procedure 12(b)(6), which permits dismissal for "failure to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The Supreme Court directs

district courts to employ a two-step analysis when considering a motion to dismiss.

See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see also Wilson v. City of Phila.,

415 F. App'x 434, 436 (3d Cir. 2011).  First, courts must determine "whether a claim

is supported by well-pleaded factual allegations."  Wilson, 415 F. App'x at 436; see

also Iqbal, 556 U.S. at 679.  Second, courts must "determine whether those well-

pleaded factual allegations, which are entitled to an assumption of truth, plausibly

give rise to an entitlement of relief."  Wilson, 415 F. App'x at 436; see also Iqbal,

556 U.S. at 679.

_____

[2] In addition to his action against Nationstar, plaintiff has filed with this Court
two related actions against separate defendants.  See Sciortino v. Barrett Daffin
Frappie Levin & Brock, LLP, 1:12-CV-01322-AT-WEJ (N.D. Ga.); Sciortino v.
Merscorp Holding, Inc., 1:12-CV-02446-AT-WEJ (N.D. Ga.).  The undersigned
observes that the defendant named in the first case is actually Barrett Daffin Frappier
Levine & Block, LLP ("Barrett Daffin").

2

In conducting the first part of that analysis, courts should accept as true only well-pleaded factual allegations, not legal conclusions. See Iqbal, 556 U.S. at 679. In conducting the second part of the analysis, courts must inquire whether the well-pleaded facts are "'enough to raise a right to relief above the speculative level.'" Mills v. Foremost Ins. Co., 511 F.3d 1300, 1303 (11th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To meet this standard, a complaint must allege facts that "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). A claim is plausible when the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted). Additionally, should a complaint plead facts "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." Id. at 679 (second alteration in original) (internal

quotation marks omitted).  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

With regard to documents discussed below, a court "may not consider matters outside the pleadings without converting [a motion to dismiss] to a motion for summary judgment."  Morton v. SunTrust Mortg., Inc., No. 1:10-CV-2594-TWT-RGV, 2010 WL 5055822, at *1 n.3 (N.D. Ga. Nov. 5, 2010) (internal quotation marks omitted), report and recommendation adopted by, 2010 WL 5055813 (Dec. 6, 2010).  "However, [a] [c]ourt may consider an exhibit without converting [a motion to dismiss] into a motion for summary judgment if the exhibit is 'central to the plaintiff's claim and the authenticity of the document is not challenged.'"  Id. (quoting Adamson v. Poorter, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) (per curiam)).  In addition, a court may consider public records filed in another case without converting a motion to dismiss to a motion for summary judgment.  See Universal Express, Inc. v. U.S. Sec. & Exch. Comm'n, 177 F. App'x 52, 53-54 (11th Cir. 2006) (per curiam).

4

## II.   **FACTUAL ALLEGATIONS**

On September 29, 2006, plaintiff (and his wife, Julie Sciortino) obtained a loan to purchase the property at issue (6038 Eagles Rest Trail, Sugar Hill, Georgia 30518) (the "Property") from lender Pensacola Guarantee Mortgage ("Pensacola") for $371,600.00.  (See Mot. Dismiss Am. Compl. Ex. 2 [10-3] ("Security Deed"), at 2, 4.)  In conjunction with the loan, he signed a promissory note (the "Note") in favor of Pensacola and the Security Deed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS").  (See id. at 2-3.)[3]

The Security Deed states that

[t]he Note or a partial interest in the Note (together with [the Security Deed]) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and [the Security Deed] and performs other mortgage loan servicing obligations under the Note, [the Security Deed], and Applicable Law.

(Security Deed 11.)  In conjunction with the Security Deed, plaintiff executed an "Acknowledgment and Waiver of Borrower's Rights Rider," in which he "acknowledge[d]" that (1) he "ha[d] read the [Security Deed] and this paragraph," (2) "any and all questions regarding the legal effect of said Security Deed and its

_____

[3] A copy of the Note has not been made part of the record.

5

provisions ha[d] been explained fully to [him]," and (3) "[he] ha[d] been afforded an opportunity to consult with counsel of [his] choice prior to executing the [Security Deed]." (Id. at 18-19.)

Plaintiff did not tender the July or August 2010 payments, went into default in July 2010, and is still in default pursuant to the terms of the Note. (See Sciortino, 1:12-CV-01322-AT-WEJ, Compl. [1] ¶ 9.) On or about December 6, 2010, MERS (as nominee for Pensacola) executed a document titled "ASSIGNMENT OF MORTGAGE/DEED," which "convey[ed], grant[ed], s[old], assign[ed], transfer[ed], and set over the described mortgage/deed together with the certain note(s) described therein together with all interest secured thereby . . . to Nationstar." (Am. Compl. Ex. B [8-2] ("Assignment"), at 2; see also Am. Compl. ¶ 8 ("Nationstar received an assignment of [plaintiff's] servicing rights on or about December 10, 2010 while . . . [p]laintiff's note was in default.").)

On August 15, 2011, Nationstar sent plaintiff a letter informing him that he was in default under the terms of the Note and Security Deed "for failure to pay the required installments when due."[4] (See Sciortino, 1:12-CV-01322-AT-WEJ, Compl.

---

[4] Such communications are known as "dunning notices." (See Am. Compl. ¶ 11.) Plaintiff alleges that he received ten dunning notices from Nationstar. (See id.)

Ex. C [1-3] ("8/15 Nationstar Letter"), at 2.)  The 8/15 Nationstar Letter identified Nationstar as the servicer of plaintiff's loan and Federal National Mortgage Association ("Fannie Mae") as "the Creditor to whom the debt is owed."  (<u>Id.</u>)  In addition, the 8/15 Nationstar Letter stated (in bold font) that "Nationstar . . . is attempting to collect a debt, and any information obtained will be used for that purpose," and that "[a]s of 8/15/2011, the amount of debt that we are seeking to collect is $8,859.35."  (<u>Id.</u>)  It informed plaintiff of the consequences (i.e., acceleration of the debt and a foreclosure sale) that could result from failure to comply.  (<u>Id.</u>)

On September 19, 2011, Nationstar sent plaintiff another letter informing him that he was in default.  (Am. Compl. Ex. A [8-1] ("9/19 Nationstar Letter").)  Unlike the 8/15 Nationstar Letter, the 9/19 Nationstar Letter did not explicitly state that Nationstar was attempting to collect a debt.  (<u>See</u> <u>id.</u> at 3-5.)  However, it stated (in bold font) that "[a]s of 9/19/2011 the amount of debt that we are seeking to collect is $11,877.51."  (<u>Id.</u> at 3.)  In addition, it informed plaintiff of the consequences (i.e., acceleration of the debt and a foreclosure sale) that could result from failure to comply.  (<u>Id.</u>)

7

On November 2, 2011, Barrett Daffin sent plaintiff a letter, stating (in bold, capital letters) "Barrett Daffin Frappier Levine & Block, LLP is a Debt Collector Attempting to Collect a Debt.  Any Information Obtained Will Be Used for That Purpose."  (Sciortino, 1:12-CV-01322-AT-WEJ, Compl. Ex. A [1-1] ("11/2 Barrett Daffin Letter"), at 2); (see also Am. Compl. ¶ 14 ("[A]round the beginning of November 2011[,] [d]efendant hired another debt collector, [Barrett Daffin], to assist in the debt collection activity.")).  It identified Nationstar as the mortgage servicer and informed plaintiff that Nationstar had authorized Barrett Daffin to "initiate legal proceedings in connection with the collection of a debt" associated with the Note and Security Deed.  (11/2 Barrett Daffin Letter 3.)

On November 3, 2011, Barrett Daffin sent plaintiff another letter, also identifying itself as a debt collector.  (Mot. Dismiss Am. Compl. Ex. 1 [10-2] ("11/3 Barrett Daffin Letter"), at 2.)  This time, the "RE" lines of the letter identified Nationstar as both the mortgage servicer and the lender.  (See id.)[5]  It further provided, inter alia, that it served as "formal notice" that "[p]ayment of the past due

_____

[5]  The letter elsewhere identifies Nationstar only as the mortgage servicer: "This firm represents NATIONSTAR MORTGAGE, the Mortgage Servicer, in its mortgage banking activities in the State of Georgia.  We have been authorized by [Nationstar] to initiate legal proceedings in connection with the collection of a debt associated with [the Note and Security Deed]."  (11/3 Barrett Daffin Letter 2.)

8

balance on the [d]ebt ha[d] not been received by the Mortgage Servicer. . . . [and that] [b]ecause of this default, the Mortgagee ha[d] elected to ACCELERATE the maturity of the debt." (Id.) It informed plaintiff that a foreclosure sale of the Property would be conducted on December 6, 2011, at the Gwinnett County Courthouse. (Id. at 3.)

Plaintiff alleges that, because he thought Fannie Mae, and not Nationstar, was his creditor (because Nationstar repeatedly identified Fannie Mae as the creditor), the 11/3 Barrett Daffin Letter's identification of Nationstar as the lender prompted him to inspect the property records related to his home on or about November 15, 2011. (Am. Compl. ¶¶ 18-19.) Plaintiff alleges that, during the course of that inspection, he discovered the Assignment, which falsely states that MERS assigned the Note to Nationstar. (Id. ¶¶ 17, 19-20.)

### III.   ANALYSIS

To prevail on a claim under the FDCPA, a plaintiff must show that

(1) [he] [has] been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011) (second alteration in original).  With one exception, defendant does not contest the first two elements,[6] arguing only that it has not violated the FDCPA through act or omission.  (See Def.'s Mem. 7.)

Plaintiff alleges that defendant violated the FDCPA in three ways.  First, plaintiff alleges that Nationstar failed to identify itself as a debt collector in the 9/19 Nationstar Letter, in violation of 15 U.S.C. § 1692e(11).  (See Am. Compl. ¶¶ 11-13, 25.)[7]  Second, plaintiff alleges that defendant violated 15 U.S.C. §§ 1692e and 1692e(8) because it knowingly communicated false credit information by "instruct[ing] Barrett [Daffin] to identify Nationstar as the 'creditor' . . . when it knew . . . that [Nationstar] was only a debt collector . . . for the actual creditor[,] Fannie Mae."  (Am. Compl. ¶¶ 15, 27, 29; see also id. ¶¶ 16, 24, 26.)  Third, plaintiff alleges that defendant violated 15 U.S.C. §§ 1692e and 1692e(8) because it

_____

[6] Specifically, defendant contends that its recordation of the Assignment did not constitute debt-collection activity.  (See Mem. Law Supp. Mot. Dismiss Am. Compl. [10-1] ("Def.'s Mem.") 15-16.)

[7] Plaintiff alleges that he received the letter giving rise to his § 1692e(11) claim (which he identifies as "Exhibit A" to the Amended Complaint) on August 18, 2011.  (Am. Compl. ¶ 11.)  Because the letter attached as Exhibit A is the 9/19 Nationstar Letter, this is an apparent error.  In any case, the undersigned evaluates plaintiff's § 1692e(11) claim based on both letters.

10

communicated false credit information "to the world" by "accept[ing] and record[ing] the assignment of [plaintiff's] . . . [N]ote in the Gwinnett County Registry of Deeds that contained a recital . . . that [MERS] sold and assigned the [N]ote secured by the [Security Deed] to Nationstar."  (Am. Compl. ¶ 17; see also id. ¶¶ 26, 28, 30.)[8]   The Court considers these claims separately below.[9]

### A.   Plaintiff's Claim Under § 1692e(11)

Section 1692e(11) requires a debt collector "to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," and "to disclose in subsequent communications that the communication is from a debt collector."  15 U.S.C. § 1692e(11).  The language of § 1692e(11) is not "a magic incantation whose ritual observance is required to avoid the sovereign's wrath," and

---

[8] Plaintiff alleges that the violation concerning the Assignment is "ongoing and continuous," and, should the Court disagree with that allegation, requests equitable tolling of the FDCPA's "one (1) year statute of limitations because the Plaintiff was diligent and acted promptly to discover the claim once he was put on Notice by Barrett [Daffin that] the alleged creditor was Nationstar and no longer Fannie Mae."  (Am. Compl. ¶ 21.)

[9] Plaintiff alleges that defendant is "liable to . . . [p]laintiff for actual damages and statutory damages of up to one thousand ($1,000) dollars per violation pursuant to 15 U.S.C. § 1692k."  (Am. Compl. ¶ 31.)  Mr. Sciortino seeks class certification for others similarly situated to himself.  (Id. ¶¶ 32-46.)

11

a communication does not give rise to a violation of § 1692e(11) when a debt collector's "purpose of collecting a debt is obvious on the [communication's] face." Dutton v. Wolpoff & Abramson, 5 F.3d 649, 656 (3d Cir. 1993); see Emanuel v. Am. Credit Exch., 870 F.2d 805, 808 (2d Cir. 1989) ("[T]here simply is no requirement that the letter quote verbatim the language of the statute."); Epps v. Etan Indus., Inc., No. 97 C 8770, 1998 WL 851488, at *8 (N.D. Ill. Dec. 1, 1998) ("A debt collector satisfies subsection 11's notice requirement as long as it is clear from the subsequent letter that the sender is a debt collector."); see also Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 668 (S.D.N.Y. 2006) (same).

The Eleventh Circuit has adopted the "least-sophisticated consumer" standard to assess whether a debt collector's communication violates § 1692e. LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193-94 (11th Cir. 2010) (per curiam). That standard provides that a communication violates § 1692e if it would mislead "the least sophisticated recipients of a debt collector's letters." LeBlanc, 601 F.3d at 1194. It presumes that a consumer "possess[es] a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Id. (internal quotation marks omitted). The test also has an objective

12

component that "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." <u>Id.</u> (internal quotation marks omitted).

As discussed above, plaintiff alleges that Nationstar sent him ten dunning notices. (Am. Compl. ¶ 11.) Of those ten, only the 8/15 Nationstar Letter and the 9/19 Nationstar Letter have been presented to the Court. The 8/15 Nationstar Letter explicitly states both that Nationstar is "attempting to collect a debt," and that "any information obtained will be used for that purpose." Hence, even if it were the initial communication as opposed to a subsequent notice, that letter could not form the basis for plaintiff's claim under § 1692e(11), leaving only the 9/19 Nationstar Letter to do so. Per the authority cited above, plaintiff cannot reasonably claim that the 9/19 Nationstar Letter did not clearly indicate that Nationstar was a debt collector. (<u>See</u> 9/19 Nationstar Letter (stating in bold font that "[a]s of 09/19/2011 the amount of debt that we are seeking to collect is $11,877.51").)[10]   Nationstar's purpose of

---

[10] Plaintiff cites two cases for the proposition that defendant's self-identification as a debt collector was insufficient: <u>Edwards v. Niagara Credit Solutions, Inc.,</u> 584 F.3d 1350 (11th Cir. 2009) and <u>Wade v. Regional Credit Association,</u> 87 F.3d 1098 (9th Cir. 1996). (<u>See</u> Pl.'s Resp. Opp'n Def.'s Mot. Dismiss [11] ("Pl.'s Resp.") 9-10.) Those cases are inapposite, as neither holds that language like that used in the 9/19 Nationstar Letter violates § 1692e(11).

13

collecting a debt was clear from the face of the 9/19 Nationstar Letter, and even an unsophisticated consumer would have no difficulty understanding that it was from a debt collector.  Accordingly, the undersigned **REPORTS** that Mr. Sciortino has failed to state a claim under § 1692e(11) and **RECOMMENDS** that defendant's Motion to Dismiss Amended Complaint be **GRANTED** with respect to plaintiff's claim under that subsection.

### B.     Plaintiff's Claims Under §§ 1692e and 1692e(8) Concerning <u>Barrett</u> <u>Daffin</u>

Section 1692e prohibits false and misleading representations in connection with debt-collection activity, providing in relevant part that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.[11]  Section 1692e(8) prohibits, in pertinent part, "[c]ommunicating or threatening to communicate to any person

---

[11] Section 1692e enumerates prohibited deceptive practices.  However, the enumeration of those practices does not "limit[] the general application" of § 1692e. 15 U.S.C. § 1692e.

credit information which is known or which should be known to be false." Id. §
1692e(8). The misidentification of a creditor is an actionably misleading statement
under § 1692e. See Bourff v. Rubin Lublin, LLC, 674 F.3d 1238 (11th Cir. 2012).[12]

As noted above, plaintiff alleges that defendant violated §§ 1692e and
1692e(8) by misidentifying itself to Barrett Daffin as a creditor. However, for
reasons explained at length in a companion case, the undersigned has reported that
Nationstar qualifies as a creditor under § 1692a(4). (See Sciortino, 1:12-CV-01322-
AT-WEJ, Final Report and Recommendation [13] 9-18.) Accordingly, even
assuming that Nationstar did inform Barrett Daffin that it was plaintiff's creditor, the
undersigned **REPORTS** that plaintiff cannot establish that defendant has violated
§§ 1692e or 1692e(8) and **RECOMMENDS** that defendant's Motion to Dismiss
Amended Complaint be **GRANTED** as to plaintiff's claims concerning Nationstar's
alleged communications with Barrett Daffin.

---

[12] For purposes of the FDCPA,

[t]he term "creditor" means any person who offers or extends credit
creating a debt or to whom a debt is owed, but such term does not
include any person to the extent that he receives an assignment or
transfer of a debt in default solely for the purpose of facilitating
collection of such debt for another.

15 U.S.C. § 1692a(4).

15

### C.      Plaintiff's Claims Under §§ 1692e and 1692e(8) Concerning the Assignment

As noted above, plaintiff alleges that defendant communicated false credit information by recording the Assignment.  Specifically, plaintiff alleges that MERS never held the Note and was never in a position to assign it to defendant, which defendant knew or should have known.  (See Am. Compl. ¶ 20.)  Because the Assignment purports to "convey, grant, sell, assign, transfer and set over" both the Security Deed and "the certain note(s) described therein," it states false credit information about plaintiff. (Assignment; see Am. Compl. ¶¶ 17, 28.)[13]  In addition, because it was recorded in a document available to the public, that false credit information was, and continues to be, "communicate[d] to the world." (Am. Compl. ¶ 28.)  Therefore, defendant's recordation, which was undertaken in connection with collection of a debt, constitutes a violation of §§ 1692e and 1692e(8).  (Am. Compl. ¶¶ 28, 30.)  Defendant responds that plaintiff's claim with respect to the Assignment

---

[13] The documents before the Court do not establish who owned the Note at the time MERS assigned its interest to Nationstar.  Plaintiff alleges that MERS had no power to assign the Note.  Thus, for purposes of this Motion, the undersigned presumes that the Assignment erroneously states that MERS assigned the Note to Nationstar.

16

is barred by the statute of limitations under § 1692k(d).  (See Def.'s Mem. 14-15; Reply Supp. Mot. Dismiss Am. Compl. ("Def.'s Reply") [12] 5-9.)[14]

Section 1692k(d) provides that "[a]n action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  The period begins to run on the date of "[a] debt collector's last opportunity to comply with the FDCPA." Maloy v. Phillips, 64 F.3d 607, 608 (11th Cir. 1995); see id. (holding that the statute began to run the day after a letter containing alleged violations was mailed); see also Baxter v. Johnson & Freedman, LLC, No. 1:11–cv–01880–CC–RGV, 2012 WL 2921799, at *5 (N.D. Ga. May 10, 2012) ("The limitations period begins to run on an FDCPA claim on the date of an alleged violation, not on the date it was discovered."), report and recommendation adopted by, 2012 WL 2921452 (July 17, 2012).  Defendant contends that December 27, 2010, the date it recorded the Assignment, is the date on which the statute of limitations began to run.  (See Def.'s Mem. 15.)  Plaintiff does not dispute that Nationstar recorded the Assignment on December 27, 2010, or that he brought the initial Complaint on May 4, 2012, more than one year after the

---

[14] Because the statute of limitations precludes plaintiff's Assignment claim, the undersigned does not address defendant's other arguments that recording the Assignment did not violate the FDCPA.

17

Assignment was recorded.[15]  He contends that § 1692k(d) should not bar this claim for two reasons.

First, plaintiff argues that the violation is ongoing and continuous (as "each person checking the property records and viewing the fraudulent assignment of the [N]ote would be conveyed false credit information by Nationstar").  (Pl.'s Resp. 13, 15; see also Am. Compl. ¶ 21.)  However, he has alleged no facts establishing (or even suggesting) that anyone else has, in fact, checked his property records or otherwise viewed the Assignment.   See 15 U.S.C. § 1692a(2) (defining communication as the "conveying of information regarding a debt directly or indirectly to [a] person through any channel").  Hence, even if a continuing violation theory were viable in this Court and in circumstances such as these,[16] the facts

_____

[15] The initial Complaint does not allege that the Assignment's recordation violated 15 U.S.C. §§ 1692e or 1692e(8).

[16] Plaintiff has cited no authority establishing that this Court or the Eleventh Circuit recognizes a continuing violation theory under the FDCPA, and other courts are divided on the issue.  Compare Joseph v. J.J. Mac Intyre Cos., L.L.C., 281 F. Supp. 2d 1156, 1161 (N.D. Cal. 2003) (holding that a continuing violation theory can apply to an FDCPA claim under "appropriate circumstances," e.g., claims of repeated harassment by a debtor), with Calka v. Kucker, Kraus & Bruh, LLP, No. 98 CIV. 0990 (RWS), 1998 WL 437151, at *3 (S.D.N.Y. Aug. 3, 1998) (rejecting the plaintiff's theory that the prosecution of a lawsuit was a continuing violation of the FDCPA).

18

alleged are no more than consistent with plaintiff's allegation that defendant's violation of §§ 1692e and 1692e(8) was a continuing violation.  See Iqbal, 556 U.S. at 678-79.

Second, plaintiff contends that, even if the Assignment does not constitute a continuing violation, the Court should equitably toll the statute of limitations until November 15, 2011, the date plaintiff discovered the Assignment.  (See Pl.'s Resp. 13-16; see also Am. Compl. ¶ 21.)  Equitable tolling is appropriate only "when a movant untimely files because of extraordinary circumstances that are both beyond [his] control and unavoidable even with diligence."  Baxter, 2012 WL 2921799, at *6 n.12 (internal quotation marks omitted); see also Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) ("Federal courts have typically extended equitable relief only sparingly.  We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.  We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." (footnotes omitted)).  As noted above, plaintiff alleges that he was diligent because, upon receiving the 11/3

19

Barrett Daffin Letter (which identified defendant as the "Lender"), he checked his property records and discovered that the Assignment stated that MERS had assigned the Note to Nationstar.

It is undisputed that plaintiff defaulted in July 2010, MERS assigned its security interest to Nationstar on or about December 6, 2010, and the Assignment's recordation took place on December 27, 2010.  The Security Deed, which plaintiff acknowledged having read and understood (see Security Deed 18-19), provides that it and the Note could be sold and the servicer altered without notice to him.  Plaintiff was aware that the entities holding the instruments related to his loan were subject to change.  In addition, he was aware as of July 2010 that his mortgage was in flux. He was free to inspect his property records at any time between December 27, 2010, and November 3, 2011, and such inspection would have alerted him to the portion of the Assignment he alleges is fraudulent.

Additionally, by alleging that defendant communicated the Note's assignment "to the world" on December 27, 2010, plaintiff essentially concedes that he was on notice of the Assignment on that date.  Cf. O.C.G.A. § 44-14-33 ("In the absence of fraud, if a mortgage is duly filed, recorded, and indexed on the appropriate county land records, such recordation shall be deemed constructive notice to subsequent

bona fide purchasers."); Sec. Union Title Ins. Co. v. RC Acres, Inc., 604 S.E.2d 547, 550 (Ga. Ct. App. 2004) ("The recording of a deed gives constructive notice of the ownership of the legally described property and any encumbrances to the property."). Moreover, plaintiff has alleged no conduct on Nationstar's part that would have tricked him into allowing the deadline to pass.  Finally, the date plaintiff alleges he discovered the fraudulent assignment of the Note, (on or about) November 15, 2011, was within the one-year limitations period, and plaintiff had over a month from that date to act on any fraud related to the Assignment.   In sum, there are no circumstances in this case that justify equitable tolling.

Under § 1692k(d), the statute of limitations on plaintiff's Assignment claim expired on December 27, 2011 (one year after defendant recorded the Assignment). Plaintiff did not bring this claim until June 25, 2012.  (See Compl; Am. Compl.) Accordingly, the undersigned **REPORTS** that Mr. Sciortino's claims under §§ 1692e and 1692e(8) related to the Assignment are barred by the statute of limitations and **RECOMMENDS** that defendant's Motion to Dismiss Amended Complaint be **GRANTED** with respect to those claims.

**D.**   **Class Action Allegations**

Because the undersigned recommends that the Amended Complaint be dismissed under Rule 12(b)(6), plaintiff's class action allegations should likewise be **DISMISSED** as **MOOT**.

**IV.**   **CONCLUSION**

For the reasons explained above, the undersigned **REPORTS** that plaintiff has failed to state claims that defendant violated (1) § 1692e(11) by failing to identify itself as a debt collector, (2) §§ 1692e and 1692e(8) by communicating false credit information to Barrett Daffin, and (3) §§ 1692e and 1692e(8) by recording a fraudulent assignment.   Accordingly, the undersigned **RECOMMENDS** that defendant's Motion to Dismiss Amended Complaint [10] be **GRANTED** and that the Amended Complaint be **DISMISSED**.   In addition, the undersigned **RECOMMENDS** that defendant's initial Motion to Dismiss [4] be **DENIED AS MOOT**.

**SO RECOMMENDED**, this 23rd day of October, 2012.

_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

AO 72A

(Rev.8/82)